*1125 OPINION.
Littleton :
The issue is whether the transfer of stocks and bonds was one intended to take effect in possession or enjoyment at or after decedent’s death. It is not contended by the Commissioner that such transfers were made in contemplation of death.
There is no evidence indicating that the decedent made such transfers as and when he did with a view to evading payment of any taxes. The written instrument embodying the agreement between him and his four sons was discussed, decided upon, and put in contract form in 1913, about nine years before his death, and was actually executed in 1916, in the original form in which drawn. He was a very successful business man, had for years before his death been receiving $12,600 per annum as interest on bonds of the North American Brewing Co., of which he had been president since its inception in 1892, and as its president had been receiving a salary of $40,000 for each of the three years immediately prior to 1916.
*1126 He was the dominant figure in the corporation and the salary of $62,000 contracted for in the agreement of March 18, 1916, between his four sons, the North American Brewing Co., and himself, was not unreasonable for his services, in view of such as he had been rendering and was to continue rendering during his natural life, the profits of the business resulting therefrom and the stock and bonds which he was transferring as a gift to his sons and from which he would no longer receive income or interest.
The recitation in the agreement of March 18, 1916, relative to the amount of salary he had for several years prior been receiving was erroneous to the extent indicated in the evidence, but in the circumstances of the case, does not in our opinion materially affect results.
His desire to give his sons his 4,900 shares of stock in the North American Brewing Co. and his 210 bonds of the company, is clearly expressed in the contract, with them and the company.
As regards the securities, the stock and bonds, there was an absolute transfer of the title to the same to the four sons when the old, unsigned contract of 1913 was finally executed on March 18, 1916. The stocks and bonds were then actually transferred and delivered to the sons.
Since that date the sons have voted the stock and received the dividends thereon, and the interest on the bonds has likewise been paid them.
There was no postponement of either possession or enjoyment on the part of the sons of the gift of the stocks and bonds to them by their father. The transfer was in everjr respect complete in 1916 and title to the property transferred vested at that time in the four sons. In Frew v. Bowers, 12 Fed. (2d) 625, the court said:
But, further, what is meant by the phrase “take effect in possession or enjoyment at or after” the death of the trust creator? The natural inclination of every lawyer is to recognize that “ take effect ” is not a phrase of art, to search for some artistie equivalent, and find it in the word “ vest.” But, if, as the result of a passage of title, the passing estate is vested, whether in fee, for life, in remainder, or in reversion, even though subject to divestment by subsequent event, then the transfer is complete, and so is the “ possession or enjoyment,” for one “ possesses and enjoys ” a reversion as thoroughly as he does a fee, even though most men prefer a fee to a reversion.
But if the transfer of an estate results in the immediate vesting thereof, and of each and every part of the same, the transaction is complete, and the grantor or transferor has no “ interest ” left therein; wherefore on his death there can be found no such “ interest ” to include in his gross estate.
In Farmers Loan & Trust Co., Executor, 16 B. T. A. 438, the Board said:
From the agreed facts we consider the gift of $20,000 to the decedent’s daughter to have been full and complete on June 2, 1922. All interest in the money passed out of the decedent at that time and he took only a personal obligation *1127 from his daughter to pay a specified sum quarterly. There is nothing in the facts from which we can fairly conclude that the money or the property purchased with the money was chargeable with the payment of the specified sum. On the contrary, it seems clear that the gift was complete at that time and was not intended to take effect in possession or enjoyment at or after death. Neither possession nor enjoyment vested at or after death. Both possession and enjoyment were given on June 2, 1922, to his daughter.
We are of opinion that the transfer was not one intended to take effect at or after death. The Commissioner therefore erred in including the stocks and bonds in the decedent’s estate for estate-tax purposes.

Judgment will be entered under Rule 50.